UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| QUINGHE LIU a/k/a KING LIU,<br>*Plaintiff,* | :<br>:<br>: |
| v. | :     No. 3:19-CV-894(OAW) |
| JOHN TANGNEY, and<br>AILING ZHOU<br>*Defendants.* | :<br>:<br>:<br>: |

RECOMMENDED RULING ON DEFENDANT JOHN TANGNEY'S
MOTION FOR SUMMARY JUDGMENT (ECF. NO. 33)

    Plaintiff, Quinghe Liu (hereinafter, "Liu" or "plaintiff"), brings this action under 42 U.S.C. § 1983 against Norwich Police Officer John Tangney (hereinafter, "Officer Tangney") and Ailing Zhou (hereinafter, "Zhou") (collectively with Officer Tangney, the "defendants"), alleging malicious prosecution in violation of the Fourth Amendment of the U.S. Constitution. Doc. No. 28, ¶10. Plaintiff also claims that defendants violated his right to be free form malicious prosecution under Connecticut common law. Doc. No. 28, ¶11. Pending before the Court is defendant Officer Tangney's Motion for Summary Judgment. Doc. No. 33. For the reasons set forth below, the Court recommends that defendant Officer Tangney's Motion for Summary Judgment (Doc. No. 33) be **GRANTED.**

    **I.**     **Factual Background**

    This case arises out of the arrest of Liu pursuant to an arrest warrant signed by Connecticut Superior Court Judge Timothy Bates on August 24, 2015, charging Liu with assault in the third degree in violation of Conn. Gen. Stat. § 53a-61 and disorderly conduct in violation

1

of Conn. Gen. Stat. § 53a-182(a)(1).  The following undisputed facts are drawn from the parties' Local Rule 56(a) Statements and exhibits in the record.[1]

On August 22, 2015, Officer Tangney reported to the Mohegan Sun Tribal Police headquarters in Uncasville, Connecticut, for a domestic abuse call.  Doc. No. 33-2, at 1, 16.  On arrival, Officer Tangney interviewed defendant Zhou with the assistance of a Mandarin Chinese interpreter, who was a co-worker of Zhou's at Mohegan Sun.  *Id.*  Zhou reported that she and defendant Liu lived together, had been in a dating relationship for over eleven years, and had a daughter in common.  *Id.*, at 1-2, 16.  She stated that six days earlier, on August 16, 2015, at approximately 12:00 p.m., she was in her apartment in Norwich, Connecticut, baking pastries.  *Id.*, at 1, 16.  Zhou then served one of the pastries to defendant Liu, who became angry over the size of the pastry.  *Id.*, at 2, 16.  Liu began to argue with Zhou, telling her the pastry was too large and that it was wasteful to bake something so large.  *Id.*  As the argument continued, Liu began to punch and pinch Zhou's arms.  *Id.*  Zhou stated that she fled to the bedroom, got in the bed and covered herself with a blanket, but that she was followed by Liu.  *Id.*  According to Officer Tangney's arrest warrant affidavit, Zhou reported that Liu pulled her out of the bed by her leg, dragged her across the bedroom floor and pinched and punched her upper legs.  *Id.*  In his affidavit, Officer Tangney stated that "[t]he victim was unable to estimate how many times the accused assaulted her or how long the assault lasted."  Doc. No. 33-2, at 16.

During the interview, the interpreter showed Officer Tangney photographs of plaintiff's injuries, specifically bruising on the front and back of her left arm and on both her upper thighs.  Doc. No. 33-2, at 17.  During the interview, Officer Tangney did not observe any bruising on

---

[1] Defendant's Local Rule 56(a)(1) Statement and exhibits are located at Doc. No. 33-2 and plaintiff's Local Rule 56(a)(2) statement is at Doc. No. 34-1.  In its recitation of undisputed facts, the Court will cite to these docket entries and the relevant page number.

defendant Zhou's arms. Doc. No. 33-2, at 48-49, 54. Officer Tangney did not request an opportunity to examine Zhou's legs for any bruising. Doc. No. 33-2, at 68-69, 71.[2] According to Officer Tangney's warrant affidavit, "[Zhou] then stated that she did not want the accused to be arrested" and became visibly upset when Officer Tangney told her that, based on her account of the assault and the nature of her injuries, he would need to interview Liu and would likely seek an arrest warrant for Liu. Doc. No. 33-2, at 17. Zhou continued to ask Officer Tangney not to pursue an arrest of Liu and to "give him a last warning." *Id.* After Officer Tangney expressed concern for Zhou's safety and that of her eleven-year-old daughter and stated that he would need to investigate further, Zhou began to cry. Officer Tangney believed, based on his training and experience, that Zhou's reaction was due to the fact "that the Asian culture is very reluctant to pursue criminal complaints." *Id.* When Officer Tangney explored whether Zhou had any alternative living arrangement, Zhou explained that that she had no family or friends with whom she could stay and that she was not comfortable with any other available options. *Id.*

On August 22, 2015, at approximately 2:27 p.m., Officer Tangney and a colleague went to Zhou's residence in Norwich to interview Liu. *Id.* Prior to his arrival at the residence, Zhou and her daughter had arrived home, despite Officer Tangney's request that they remain at Mohegan Sun while he interviewed Liu. *Id.* Officer Tangney asked Zhou and her daughter to step outside the home with his colleague so he could speak to Liu alone. *Id.* Officer Tangney

---

[2] Officer Tangney testified during Liu's trial that he did not examine Zhou's legs for bruising because he did not have a female officer present to appropriately conduct such an examination, and because he assumed, based on the passage of time since the incident and the lack of bruising on Zhou's arms, that there was not likely to be visible bruising on her legs. Doc. No. 33-2, at 68-69, 71. The parties' Local Rule 56 statements do not address his reasoning in this regard. Irrespective of his reasoning, it is undisputed that Officer Tangney did not examine Zhou's legs. Further, as noted in Officer Tangney's warrant affidavit, Liu did not contest Officer Tangney's assertion that Zhou sustained bruises on her arms and legs, but denied that he struck her. Doc. 33-2, at 17.

then interviewed Liu in the kitchen. *Id.* According to the arrest warrant affidavit, Liu "stated that he and [Zhou] had been verbally arguing on the afternoon of August 16, 2015, but stated that he did not hit the victim." *Id.* When Officer Tangney asked how Zhou had gotten the multiple bruises on her legs and arms, Liu stated "[s]he gets bruised like that all the time. I think it is a medical condition." *Id.* As Officer Tangney asked additional questions about Zhou's bruises and the incident, Liu became increasingly agitated and raised his voice, stating "this is an abuse of police power" and "if you think I did this arrest me, you have no proof." *Id.*

Based upon the photographs and the statements by Zhou and Liu, Officer Tangney believed there was probable cause for an arrest warrant and submitted an arrest warrant application alleging violations for assault in the third degree and disorderly conduct to Connecticut Superior Court Judge Timothy Bates. *Id.* In the warrant affidavit, Officer Tangney stated that he viewed photographs of Zhou's injuries, but did not mention his observation that there were no bruises on Zhou's arms when he interviewed her on August 22, 2015, six days after the alleged assault, and that he had not examined her legs during the interview. Doc. No. 33-2, at 16-17, 68-69, 71; Doc. No. 34-1, at 2. Judge Bates reviewed and signed the arrest warrant for Liu on August 24, 2015. Doc. No. 33-2, at 17. Pursuant to the arrest warrant, Norwich Police arrested Liu the same day. *Id.*, at 3. On April 26, 2017, Liu was tried solely on the charge of third degree assault and a superior court jury returned a not guilty verdict. *Id.*

On June 10, 2019, Liu commenced this action against Officer Tangney and Zhou. In his Amended Complaint dated June 23, 2020, Liu alleges that, in his warrant application, defendant Tangney "maliciously and intentionally omitted the crucial fact that, although Zhou claimed the assault had taken place only very recently, she exhibited no bruising whatsoever." Doc. No. 28, ¶7. Accordingly, plaintiff claims that defendant Tangney violated his right to be free from

malicious prosecution under the Fourth Amendment as enforced through 42 U.S.C. § 1983 and in violation of the common law of the State of Connecticut. *Id.*, ¶10-11.

## II. Standard of Review

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). In making such a determination, a court examines the evidence in the light most favorable to, and draws all inferences in favor of, the non-movant. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). A genuine issue of material fact is one which "might affect the outcome of the suit under the governing law," and as to which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir. 1997). The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Accordingly, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks omitted).

Once the moving party has met its burden, in order to defeat the motion, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, and present such evidence as would allow a jury to find in his favor. *Graham v.*

*Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must point to "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

"In assessing the record, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000).

### III.     Discussion

Officer Tangney argues that he is entitled to summary judgment on Liu's § 1983 claim because 1) there was probable cause to arrest Liu at the time Officer Tangney submitted the arrest warrant application, even if the lack of observed bruises at the time of Zhou's interview had been mentioned in the warrant affidavit, and therefore a malicious prosecution claim fails;

and 2) he is entitled to qualified immunity because there was arguable probable cause. The Court will address each of these arguments in turn.

### a. Whether There Existed Probable Cause to Arrest Sufficient to Defeat a Malicious Prosecution Claim

#### i. There was probable cause to arrest.

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Second Circuit has held that a § 1983 malicious prosecution claim brought by a plaintiff "to vindicate" his or her Fourth Amendment "right to be free from unreasonable seizures, [is] substantially the same as [a] claim[ ] for . . . malicious prosecution under state law," *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted), and the court looks to the law of the state where the arrest occurred, *Davis v. Rodriguez*, 364 F.3d 424, 433-34 (2d Cir. 2004). Under Connecticut law, to bring a claim for malicious prosecution, a plaintiff must prove the following elements: " '(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.' " *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210-11 (2010)). To prevail on a malicious prosecution claim, Connecticut law requires that a defendant act without probable cause. *Johnson v. Fallon,* No. 3:07CV605(SRU), 2009 WL 513733, at *4 (D. Conn. 2009). Accordingly, if Liu's arrest was supported by probable cause, his claim for malicious prosecution fails.

Officer Tangney does not contest that the first two elements of the malicious prosecution claim – defendant's initiation of the criminal proceedings and favorable termination of those

7

proceedings in Liu's favor, have been met. As to the element of probable cause, Officer Tangney argues that he was justified in believing that probable cause existed to initiate proceedings against the plaintiff on the charge of assault in the third degree and disorderly conduct based, in large part, on Zhou's statements of the assault, the photographs Officer Tangney reviewed, and Liu's statements during his interview, including about Zhou's predisposition to bruising.[3]

    Probable cause to arrest exists where an officer has "knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Curley v. Vill. of Suffern,* 268 F.3d 65, 69-70 (2d Cir. 2001); *see also Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2006) (probable cause standard under federal and Connecticut law are identical). Probable cause "comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." *Feliz v. DeCusati*, No. 3:10CV1352(JBA), 2012 WL 3985165 at *4 (D. Conn. Sept. 10, 2012) (quoting *State v. Grant*, 286 Conn. 499, 511). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (citation omitted). When arresting an individual on probable cause, "[t]he police need not be certain that the person arrested will be prosecuted successfully." *Johnson*, 2009 WL 513733, at *4, citing *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). The Second Circuit has explained that "probable cause is a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules . . . While probable cause requires more than a mere suspicion of

---

[3] Ultimately, Liu was tried only on the assault third degree charge against him. Accordingly, the Court will focus its discussion on whether Officer Tangney had probable cause to seek Liu's arrest on that charge.

wrongdoing, its focus is on probabilities, not hard certainties." *Walczyk,* 496 F.3d at 156 (internal quotation marks and citation omitted). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

Under Conn. Gen. Stat. § 53a-61, "a person [commits] assault in the third degree when[,] with intent to cause physical injury to another person, he causes such injury to such person or to a third person." Here, the undisputed facts show that Officer Tangney had probable cause to believe that Liu assaulted Zhou. Zhou told Officer Tangney that, on August 16, 2015, Liu became very angry at Zhou, that he began to punch and pinch her arms, that she fled to the bedroom and got in her bed and under a blanket to escape from Liu, and that Liu pulled her from the bed by her leg, dragged her across the bedroom floor and began to punch and pinch her legs. Zhou's co-worker, who was present and interpreted for Zhou during the interview, showed Officer Tangney photographs of her alleged injuries. Zhou's description of the alleged assault and Officer's Tangney's observations of the photographs alone were sufficient to satisfy all requisite elements of assault in the third degree, including the use of physical force, intent to cause injury and actual injuries, and was sufficient to give rise to probable cause to arrest Liu for that offense. *See Bourguignon v. Guinta,* 247 F. Supp. 2d 189, 193 (D. Conn. 2003) (internal quotation marks and citation omitted)(a "police officer may rely upon the statements of victims or witnesses to determine the existence of probable cause for the arrest . . . regardless of the ultimate accurateness or truthfulness of the statements."); *Curley v. Vill. of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity"); *Martel*

*v. Town of South Windsor,* 345 Fed. Appx. 663, 664 (2d Cir. 2009) (quoting same); *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) ("police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed"); *Stone v. Town of Westport,* 411 F. Supp. 2d 77, 87 (D. Conn. 2006) ("it is well established that a law enforcement officer has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth") (internal citation omitted).

Officer Tangney's observations of and conversation with Zhou in which she described the incident, and his description of his interview of Liu, also contributed to the totality of circumstances giving rise to probable cause, and it was reasonable for him to conclude that those facts did not raise material doubts as to the veracity of Zhou's report. Notably, when Officer Tangney informed Zhou that he would likely seek an arrest warrant for Liu, she became very upset. However, she did not retract any of her allegations but requested that Liu be "given a last warning." Doc. No. 33-2, at 17. When Officer Tangney expressed fear for her safety and that of her daughter, she did not dispute that notion and began to cry, but explained that she had no friends or family to stay with and was not comfortable with other options available to her. Officer Tangney also noted in the warrant affidavit that, in his experience, Asian victims by cultural background are very reluctant to pursue criminal complaints. Nor did the passage of six days between the alleged assault and the Zhou's police report render it unreasonable for Officer Tangney to credit her allegations. Viewed in context of her other statements that Liu be given a last warning, that she was upset and crying and that she expressed concern about living arrangements, it was reasonable for Officer Tangney to conclude that her apparent hesitancy and anxiety were consistent with being an assault victim and were due to cultural reluctance to

pursue a criminal matter, rather than some false motive. *See Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("a police officer may draw inferences based on his own experience in deciding whether probable cause exists"); *see also United States v. Pabon*, 871 F.3d 164, 174 (2d Cir. 2017).

Similarly, it was reasonable for Officer Tangney to conclude that Liu's statements and demeanor during his interview tended to support Zhou's report. Liu expressly corroborated Zhou's allegation that there had been a verbal altercation on August 16, 2015. Additionally, when Officer Tangney inquired how Zhou had gotten multiple bruises on her arms and legs, Liu did not dispute that Zhou had leg and arm bruises, though he denied that he hit her and asserted that "she gets bruised like that all the time" and that he thought it was "a medical condition." Doc. No. 33-2, at 17. Under the totality of the circumstances, it was reasonable for Officer Tangney to believe that Liu's explanation strained credulity, and that Zhou's version of events was more credible. *See United States v. Fleming*, No. 18CR197(KAM), 2019 WL 486073, at *4-6 (E.D.N.Y. Feb. 6, 2019) (observing that officer may make reasonable credibility assessments in determining the existence of probable cause).

In short, there is no genuine issue of fact for trial that there was probable cause for the arrest in this case.

    ii.  ***The asserted omission in the warrant affidavit did not eliminate probable cause.***

In his opposition to the motion for summary judgment, Liu's primary contention is that Officer Tangney failed to mention in the warrant affidavit that he did not observe any of the alleged bruises at the time of the interview. Doc. No. 34-1, at 2. While it is undisputed that the warrant affidavit did not mention that Officer Tangney did not see bruising on Zhou's arms and

did not examine her legs, this fact does not raise a genuine dispute as to the existence of probable cause to arrest.

The right to be free from malicious prosecution includes "the right to be free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing magistrate information within the officer's knowledge that negated probable cause." *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994). "A plaintiff can demonstrate that this right was violated where the officer . . . 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement . . .' or omitted material information," and where "such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (citations omitted); *see also Martinez v. City of Schenectady*, 115 F.3d 111, 115 (2d Cir. 1997). "The first step in assessing the materiality of such an omission is to 'correct the allegedly defective affidavit by inserting the information withheld from the magistrate judge." *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir. 1999). Next, the court must determine if the *corrected* affidavit is supported by probable cause. *Id.* "If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred." *Soares*, 8 F.3d at 920; *see also Rosen v. Alquist*, No. 3:10CV01911(VLB), 2012 WL 6093909 at *8 (D. Conn. Dec. 7, 2012) (holding that summary judgment on the probable cause element of malicious prosecution claim "is appropriate where the evidence, viewed in the light most favorable to the plaintiffs, discloses *no genuine dispute* that a magistrate would have issued the warrant on the basis of the corrected affidavits.") (emphasis added).

In light of all the circumstances discussed above, no reasonable juror could conclude that the omitted information was necessary to, or would have altered, the judicial officer's decision to

issue the arrest warrant.  Neither the lack of observable bruises on Zhou's arms nor Officer Tangney's decision not to examine Zhou's legs would overcome the weight of the other circumstances suggesting that Liu had committed a domestic assault.  Further, such information, even if included, would not have cast any doubt on Zhou's allegations of an assault resulting in injuries to her, particularly where Liu did not dispute Officer Tangney's assertion that Zhou had suffered bruises on her arms and legs and attributed them to a medical condition.  Accordingly, where Liu did not even contest the existence of the injuries, the single fact that Officer Tangney did not observe any bruising during his interview of Zhou would not, in and of itself, have vitiated the existence of probable cause.  *See*, *e.g.*, *Nash v. County of Nassau*, No. 1:16CV2148 (JFB) (AYS), 2019 WL 1367159, at *5 (E.D.N.Y. Mar. 26, 2019) (where domestic assault victim alleged the assault had taken place and resulted in pain to her jaw, her refusal of medical attention at the scene did not undermine the credibility of her sworn report of domestic abuse).  In the Court's view, no rational jury could conclude that the judicial officer would not have issued the requested warrant under these circumstances.

In his opposition brief, Liu describes the lack of observed bruises as "highly exculpatory."  To the extent that Liu's argument is that Officer Tangney should have investigated further in light of Liu's denial that he struck Zhou and the lack of bruising on her arms at the time of Officer Tangney's interview of her, the argument is unavailing.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir. 1989) ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer.  Once officers possess facts sufficient to establish

probable cause, they are neither required nor allowed to sit as prosecutor, judge, or jury.") (internal citation omitted).

Lastly, although Liu ultimately was acquitted of the assault charge after trial, this has no bearing upon whether probable cause existed at the time of the warrant application. *See Willoughby v. Peterson,* 3:10CV509(JGM), 2012 WL 3726532 (D. Conn. Aug. 27, 2012) ("The fact that charges were later nolled or even that the accused was later acquitted of the crime does not obviate the validity of the warrant, as '[t]he quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction.'") (*citing United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1983); *see also Johnson v. Ford,* 496 F. Supp. 2d 209, 213 (D. Conn. 2007) ("Because the existence of probable cause depends on the probability, rather than the certainty, that criminal activity has occurred, the validity of an arrest does not require an ultimate finding of guilt.").

In summary, even if the assertedly omitted information had been included in the warrant affidavit, there remained probable cause to arrest and no reasonable jury could conclude otherwise on the undisputed facts. Therefore, there is no genuine issue of fact remaining for trial and the plaintiff's malicious prosecution claim fails as a matter of law.

> b. *Whether There was Arguable Probable Cause to Arrest Sufficient to Confer Qualified Immunity.*

Qualified immunity shields law enforcement officers from claims for money damages arising from the performance of their duties. *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017). To overcome qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Id.* at 80-81. The Supreme Court has observed that "the appropriate question is the objective inquiry of whether a reasonable officer could have believed that [his actions were]

14

lawful, in light of clearly established law and information the officer [ ] possessed." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (quoting *Wilson v. Layne,* 526 U.S. 603 (1999)). "[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." *Id.* "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks and citation omitted). "[L]ike the probable cause analysis, the analysis of a qualified immunity defense to claims that official actions were taken without probable cause entails an inquiry into the facts known to the officer at the time of the arrest[.] [A] court must evaluate the objective reasonableness of the [officer's] conduct in light of . . . the information the . . . officers possessed." *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (internal quotation marks and citations omitted).

     As a preliminary matter, there is no dispute that the Fourth Amendment right to be free of arrest without probable cause was clearly established at the time of Liu's arrest, *see Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997); however, for all the reasons stated above, there was probable cause for the arrest in this case, so there was no Fourth Amendment violation. Additionally, even if probable cause did not exist, *arguable* probable cause plainly exists here such that Officer Tangney is entitled to qualified immunity. Zhou informed Officer Tangney that Liu assaulted her following an argument in their home and inflicted bruises to her arms and

15

upper legs. During his interview, Officer Tangney observed photographs that Zhou confirmed depicted her bruises from six days earlier. While Zhou expressed reluctance to have Liu arrested, she did not at any time indicate to Officer Tangney that she had fabricated her allegations. Instead, he reasonably concluded that her anxiety was related to her concern over her living situation and an inherent cultural hesitancy to pursue a criminal complaint. While he did not observe bruises on her arms, it was a plausible inference on his part that bruises from an incident six days earlier may have faded. *See Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) ("For the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time . . . based upon their own experiences."). At the conclusion of his conversation with Zhou, Officer Tangney had before him all necessary facts to believe that an assault in the third degree had probably occurred.[4]

Officer Tangney's conversation with Liu only served to corroborate what Officer Tangney learned from Zhou. At a minimum, it was objectively reasonable for Officer Tangney to believe so. Liu confirmed Zhou's statement that there had been an argument on August 15, the date of the incident Zhou alleged. While Liu claimed that he had not struck Zhou, he did not challenge the existence of any of Zhou's bruises when confronted by Officer Tangney as to how Zhou had sustained those injuries. Instead, he offered a dubious explanation that Zhou had a

---

[4] It should be noted that Connecticut General Statute § 46b-38b requires police officers to make arrests in domestic violence situations. This statute provides that "(a) [w]henever a peace officer determines upon speedy information that a family violence crime, as defined in subdivision (3) of section 46b-38a, has been committed within his jurisdiction, he shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime." As the Second Circuit Court of Appeals observed in *Lee*, "[t]his statute reflects the legislature's attempt to eliminate indifference by law enforcement agencies when responding to reports of domestic violence and to prevent further injury to victims of family violence." 136 F.3d at 104.

medical condition from which she spontaneously develops bruises. Officer Tangney was certainly entitled to weigh the credibility of this explanation, or lack thereof, in his analysis of whether probable cause existed to believe Liu had committed an assault as Zhou asserted. Even if there was a hypothetical corrected affidavit which included the fact that Officer Tangney did not examine Zhou's legs and did not see bruises on Zhou's arms, this fact does not detract from the objective reasonableness of Officer Tangney's conclusion that probable cause existed to seek an arrest warrant because this observation occurred six days after the incident when bruises might have faded and Liu did not dispute the existence of Zhou's bruises. *See Lee*, 136 F.3d at 104 (despite some inconsistencies in domestic violence victim's description of incident, her erratic behavior and history of psychiatric problems, court granted qualified immunity on the basis of arguable probable cause and noted that "given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations, and the presence of factors here that suggest that [victim's] statements were not incredible, we hold that as a matter of law, the State Troopers' actions were objectively reasonable."). Here, too, from the universe of facts available to him based on his interactions with Zhou and Liu, it was objectively reasonable for Officer Tangney to believe that probable cause existed. At the very least, on the totality of facts known to him, reasonable officers could differ as to whether Officer Tangney had probable cause to seek a warrant for Liu's arrest.

Here again, the only fact that Liu cites in opposition to the motion for summary judgment is that Officer Tangney did not state in the warrant affidavit that he did not observe any bruises when he interviewed Zhou six days after the alleged assault. Although an arrest pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable, *see Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), that presumption can be

17

defeated by showing that a defendant (1) "knowingly and deliberately, or with a reckless disregard of the truth," procured the warrant, (2) based on "false statements or material omissions," that (3) "were necessary to the finding of probable cause." *Ganek*, 874 F.3d at 81 (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)).  In such instances, the Second Circuit has instructed courts to "look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support *arguable* probable cause to make the arrest as a matter of law." *Escalera*, 361 F.3d at 743-44 (emphasis added); *see also Ganek* at 82 (explaining that if the corrected affidavit lacks probable cause, defendants are still entitled to immunity "if a similarly situated law enforcement official could have held an objectively reasonable—even if mistaken—belief that the corrected affidavit demonstrated the necessary probable cause"); *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995) (where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity).

    As discussed above, no reasonable juror could conclude that the assertedly omitted information was necessary to – or would have altered – the judicial officer's probable cause finding.  But, even assuming for the sake of argument that this information would have changed the judicial officer's mind, it was still objectively reasonable for Officer Tangney to believe, under the circumstances, that there was probable cause to believe that Liu had committed the alleged offense.  Accordingly, there was arguable probable cause, and Officer Tangney is entitled to qualified immunity in this case.

Therefore, even assuming that there were some genuine dispute of material fact that precluded summary judgment on the malicious prosecution claim, Officer Tangney would still be entitled to qualified immunity from the claims in this action.

## IV. Conclusion

For the reasons stated above, the Court recommends that defendant's Motion for Summary Judgment (Doc. No. 33) be **GRANTED**. This is a recommended ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2). Accordingly, any objection must be filed on or before April 1, 2022. Failure to object by that date will preclude review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(d) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2.

**SO ORDERED**, on this 18th day of March, 2022, at Bridgeport, Connecticut.

> */s/ S. Dave Vatti*
> Hon. S. Dave Vatti
> United States Magistrate Judge